UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

RESER'S FINE FOODS, INC.,                :
         Plaintiff,                     :   No. 5:15-cv-0738
     v.                                :
                                                  :
VAN BENNETT FOOD CO., INC.,              :
JOHN MARCINKO, and                       :
JOLINE MARCINKO,                         :
         Defendants.                   :
_____

## MEMORANDUM

**Plaintiff's Motion for Default Judgment, ECF No. 11 – Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**                                                        **October 15, 2015**
**United States District Judge**

      This matter is before the Court upon Plaintiff's Motion for Default Judgment. ECF No. 11. Plaintiff, produce seller Reser's Fine Foods, Inc., instituted the present action against Defendants Van Bennett Food Co., Inc., ("Van Bennett"), John Marcinko, and Joline Marcinko to recover amounts allegedly owed to Plaintiff as a trust beneficiary under the Perishable Agricultural Commodities Act ("PACA"). See Compl., ECF 1. Plaintiff seeks recovery of the unpaid purchase price of agricultural commodities sold to Van Bennett, as well as interest and attorney's fees. Compl. ¶ 15. Default has been entered against Defendants, and Plaintiff now moves for default judgment.[1] For the reasons discussed below, the Court grants Plaintiff's Motion for Default Judgment in part and denies the Motion in part.

---

[1]     Plaintiff filed its Complaint in this action on February 13, 2015. ECF No. 1. Defendants were served with the Complaint on March 24, 2015. ECF No. 5. They failed to respond to the Complaint, and the Clerk of Court entered default against Defendants on April 22, 2015. On May 8, 2015, Plaintiff filed with the Clerk of the Court a Request for Entry of Default Judgment against all Defendants, pursuant to Rule 55(b)(1) of the Federal Rules of Civil Procedure. ECF No. 9. After the Clerk of Court referred Plaintiff's Request to this Court, the Court issued an

1

I.    **Factual Background**[2]

Plaintiff is an Oregon-based corporation engaged in the business of selling wholesale fresh vegetables nationwide and was, at all times relevant to this action, licensed by the United States Department of Agriculture pursuant to PACA. Compl. ¶ 1. Defendant Van Bennett is a Pennsylvania corporation and a citizen of that state with its principal place of business in Reading, Pennsylvania. Compl. ¶ 2. Defendants John Marcinko and Joline Marcinko are citizens of Pennsylvania, residing in Reading, who were the owners, officers, directors, and/or at least 10% shareholders of Van Bennett during the relevant time period. Compl. ¶ 2. These individual Defendants are or were persons in control of and responsible for the day-to-day operations of Van Bennett and the disposition of Van Bennett's assets, including its PACA trust assets. Compl. ¶ 2.

Between August 2014 and September 2014, Plaintiff sold and delivered to Van Bennett four shipments of fresh potatoes for a total price of $9,145.00. Compl. ¶¶ 6-7. For each of the four shipments, Plaintiff forwarded invoices to Van Bennett containing the language required by 7 U.S.C. § 499e(c)(4), giving notice to Van Bennett that the commodities sold were subject to the PACA trust provisions stated in 7 U.S.C. § 499(e)(c). Compl. ¶ 12; Compl. Ex. A, ECF No. 1-1. Van Bennett has not paid Plaintiff for the produce. Compl. ¶ 9 & Ex. A.

II.   **Legal Standard**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must

---

Order stating that it would construe Plaintiff's Request as a motion for default judgment pursuant to Rule 55(b)(2). ECF No. 10. The Court also ordered Plaintiff to supplement its Motion with a brief and any other materials it deemed appropriate. Id. Plaintiff subsequently filed a Motion for Default Judgment accompanied by a brief and additional materials in support of the Motion. ECF No. 11.

[2]    This factual summary is drawn from the Verified Complaint and additional papers filed by Plaintiff. For the purpose of ruling on Plaintiff's Motion for Default Judgment, the Court takes as true the factual allegations of the Complaint, except those relating to the amount of damages. See Maryland Cas. Co. v. Frazier Family Trust, No. CIV.A. 13-2311, 2014 WL 345218, at *1 (E.D. Pa. Jan. 30, 2014).

enter the party's default." Fed. R. Civ. P. 55(a). Once the Clerk enters default, if the claim is not for a sum certain as contemplated by Federal Rule 55(b)(1), then "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); see also Phoenix Ins. Co. v. Small, 307 F.R.D. 426, 433 (E.D. Pa. 2015). In reviewing a motion for default judgment,

> [t]he court's initial inquiry is "whether the unchallenged facts constitute a legitimate cause of action." 10A Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2688 (3d ed. 2013) (citing cases). As at the motion to dismiss stage, the court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990), as well as all reasonable inferences that can be drawn from the complaint, e.g., Yang v. Hardin, 37 F.3d 282, 286 (7th Cir. 1994). Conclusory allegations and the parties' legal theories or "conclusions of law" are not entitled to the same presumption and are not deemed admitted. Wright & Miller, supra, § 2688.

Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 270-71 (E.D. Pa. 2014) (footnotes omitted).

"If the court determines that the plaintiff has stated a cause of action, it must then assess damages." Id. "The court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" Spring Valley Produce, Inc. v. Stea Bros., No. CIV.A. 15-193, 2015 WL 2365573, at *3 (E.D. Pa. May 18, 2015) (quoting Star Pacific Corp. v. Star Atlantic Corp., 574 F. App'x 225, 231 (3d Cir. 2014)). Rule 55(b)(2) provides that the court "may conduct hearings" when it needs to determine the amount of damages. However, "[i]f the court can determine the amount of damages to be awarded based on affidavits or other evidentiary materials, '[t]he Court is under no requirement to conduct an evidentiary hearing with testimony.'" Id. at 271 n.8 (quoting E. Elec. Corp. of N.J. v. Shoemaker Constr. Co., 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009)).

"It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

### III.     Analysis

#### A.     Jurisdiction

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." D'Onofrio v. Il Mattino, 430 F. Supp. 2d 431, 437 (E.D. Pa. 2006) (quoting Williams v. Life Sav. and Loan, 802 F.2d 1200, 1203 (10th Cir. 1986)). Here, the Court finds that subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 because this action involves a federal question, the application of PACA. See Frank Gargiulo & Son, Inc. v. Riverdell Mkt. Corp., No. CIV.A. 08-5102, 2009 WL 2151908, at *2 (D.N.J. July 14, 2009); see also 7 U.S.C. § 499e(5) ("The several district courts of the United States are vested with jurisdiction specifically to entertain . . . actions by [PACA] trust beneficiaries to enforce payment from the trust."). This Court also finds that it has personal jurisdiction over Defendants because Van Bennett is a Pennsylvania corporation and the Marcinkos are residents of Pennsylvania.

#### B.     **Plaintiff Has Established a Cause of Action against Van Bennett under PACA.**

"Congress enacted PACA in 1930 to deter unfair business practices and promote financial responsibility in the perishable agricultural goods market." Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 419 (3d Cir. 2005). Under PACA, it is unlawful for a dealer in

commodities to fail to make prompt, full payment to the person with whom it made a commodity transaction. 7 U.S.C. § 499b(4). "To ensure payment, perishable agricultural commodities sold and the proceeds from the resale of those commodities are held in trust by the buyer for the benefit of the seller until full payment is made to the seller." <u>Spring Valley Produce</u>, 2015 WL 2365573, at *2. "The purchaser is charged with a duty to insure that the PACA trust has sufficient assets to ensure prompt payment of the amounts owed to the seller." <u>Id.</u> A purchaser who violates these provisions is liable for the full amount of damages the seller sustains. 7 U.S.C. § 499e(a).

"To create a PACA trust, a produce seller must provide the buyer with notice of its intention to preserve trust benefits." <u>DiMare Homestead, Inc. v. Klayman Produce Co.</u>, No. CIV.A. 12-2577, 2012 WL 5354597, at *2 (E.D. Pa. Oct. 31, 2012). Notice may appear on a merchant's invoices in the following form:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4).

Here, Plaintiff included the necessary language on each of its invoices to Van Bennett, thereby creating a statutory trust under PACA in which Plaintiff's agricultural products are included as trust assets. <u>See</u> Compl. Ex. A. Further, in the uncontroverted pleadings of the Complaint, Plaintiff has alleged that it supplied Van Bennett with agricultural commodities covered by PACA and that it has not received payment for those commodities. Plaintiff further alleges that Van Bennett has failed to maintain the trust assets and keep them available to satisfy

the claims as required by PACA. Thus, Plaintiff has stated a valid claim that Van Bennett is liable for the unpaid purchase price of the commodities. See 7 U.S.C. § 499e(a).

**C.    Plaintiff has Established a Cause of Action against John Marcinko and Joline Marcinko under PACA.**

Plaintiff also alleges that John Marcinko and Joline Marcinko, as owners or officers of Van Bennett, are personally liable for the breach of Van Bennett's duties under PACA. See Compl. ¶¶ 2, 16-20. "[I]ndividual shareholders, officers, or directors of a corporation who are in a position to control trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under PACA." Bear Mountain Orchards, Inc. v. Mich–Kim, Inc., 623 F.3d 163, 166 (3d Cir. 2010). (emphasis omitted) (quoting Golman–Hayden Co. Inc. v. Fresh Source Produce Inc., 217 F.3d 348, 351 (5th Cir. 2000)).

> Individual liability for violating PACA trust duties may be imposed where the person (1) holds a position that suggests a possible fiduciary duty to preserve PACA trust assets (e.g., officer, director, or controlling shareholder); and (2) actually is able to control the PACA trust assets at issue. Bear Mountain Orchards, 623 F.3d at 172. The Court of Appeals for the Third Circuit has held that "[t]he ability to control is core" and that "[a] formal title alone is insufficient" to establish personal liability under PACA. Id.

DiMare Homestead, Inc., 2012 WL 5354597, at *2.

Plaintiff alleges that the Marcinkos are or were the "owners, officers, directors" of Van Bennett and that they "are or were persons in control of and responsible for the day to day operations of Van Bennett" and the disposition of Van Bennett's assets. Compl. ¶ 2. These allegations are supported by documents included in Exhibit A to the Complaint, including a memorandum from John Marcinko addressed to "All Our Valued Brokers and Suppliers," written on Van Bennett letterhead, dated November 1, 2012, indicating that John R. Marcinko is the President and CEO of Van Bennett and stating that:

6

> John and Joline Marcinko and the Marcinko Family are pleased to announce[ ] that they have purchased the half interest in Van Bennett Foods from Patrick Emmett effective Monday October 29, 2012. . . . . Our family is excited to take Van Bennett Foods to the next level and we will be contacting each of you shortly to set up a meeting to seek ways to build our business together. The Marcinko Family will also be making a large capital investment into the business for future growth and expansion.

Exhibit A of the Complaint also includes a "Credit Information" document written on Van Bennett letterhead indicating that John R. Marcinko and Joline Marcinko are, respectively, President and Vice-President of Van Bennett. In addition, Exhibit A includes a copy of a check from the Van Bennett corporate account for payment to Plaintiff, signed by John Marcinko. (A handwritten note on the Exhibit indicates that the check was returned for non-sufficient funds.) In light of this documentation, the Court finds that the allegations stated in the Complaint are sufficient to demonstrate that John Marcinko and Joline Marcinko held positions that suggest a fiduciary duty to preserve PACA trust assets and that they maintained actual control over the PACA trust assets at issue. See Bear Mountain Orchards, 623 F.3d at 172–74. Accordingly, Plaintiff has stated a valid cause of action against John Marcinko and Joline Marcinko.

**D.     Default Judgment is Warranted.**

Having determined that Plaintiff has alleged a valid claim against Defendants, the Court must next consider the three Chamberlain factors quoted above in determining whether a default judgment is warranted: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

First, "[p]rejudice to the plaintiff exists where denial of a default judgment would 'impair the plaintiff's ability to effectively pursue his or her claim.'" Spring Valley Produce, 2015 WL 2365573, at *3 (quoting Grove v. Rizzi 1857 S.P.A., No. 04–2053, 2013 WL 943283, at *2 (E.D.

7

Pa. March 12, 2013)). "Where, as here, a defendant fails to respond to the complaint, the potential delay threatens to carry on indefinitely, and that potential delay establishes prejudice to the plaintiff." Id. Second, "outside of the court's obligation to decide whether it has jurisdiction and whether the complaint states a claim, the court may presume that an absent defendant who has failed to answer has no meritorious defense." Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 271-72 (E.D. Pa. 2014). Third, "the defendant's failure or refusal to 'engage[ ] in the litigation process and [to] offer[ ] no reason for this failure or refusal' may 'qualif[y] as culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative.'" Id. (quoting E. Elec. Corp. of N.J. v. Shoemaker Constr. Co., 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009)). Accordingly, under the three Chamberlain factors default judgment is warranted in this case.

**E.     Plaintiff's Damages**

First, Plaintiff is entitled to the unpaid purchase price of the produce that it sold and delivered to Van Bennett: $9,145.00. In addition to the unpaid purchase price of the produce, Plaintiff seeks interest at 18% per annum (1.5% per month) on the unpaid balance and attorney fees in the amount of $3,260.89. See Compl.; Pl's Mot Default J. 2. "Where terms for attorney fees and interest are part of the contract between the parties, the fees and interest are recoverable as 'sums owing in connection with such transactions' under PACA." Food Team Int'l, Ltd. v. Unilink, LLC, 872 F. Supp. 2d 405, 419 (E.D. Pa. 2012) (quoting Weis–Buy Services, Inc. v. Paglia, 307 F. Supp. 2d 682, 694–695 (W.D. Pa. 2004), rev'd on other grounds, 411 F.3d 415 (3d Cir. 2005). See also Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc., No. 04 CIV 2666, 2005 WL 1149774, at *2 (S.D.N.Y. May 16, 2005) ("The law in this area is clear – PACA

itself does not create a right to attorneys' fees or interest, but where the parties' contracts include such terms, they can be awarded.").

Here, Plaintiff contends that the "claim for pre-judgment interest at 18% ([1.5%] per month on the unpaid balance) from September 20, 2014, is supported contractually by the executed credit application, dated November 6, 2012, and confirmed by email dated November 7, 2012, signed by Defendant John Marcinko." Pl.'s Mot. 2. These documents – the executed credit application and the confirmation email – are attached to Plaintiff's Motion at Exhibit B.[3] However, the documents do not make any reference to interest or the 18% figure cited by Plaintiff.[4] Nor is there any other basis in the record for finding that interest is part of the contract between the parties. For this reason, the Court declines to award interest and will deny this aspect of Plaintiff's Motion.

With respect to attorney's fees, Plaintiff's credit application form signed by John Marcinko states in pertinent part as follows: "In the event that it is necessary for Reser's to commence any action, or otherwise seek to enforce this agreement against the customer and/or guarantor customer agrees to pay collection agency fees, reasonable attorney(s) fees, court costs and other expenses incurred by Reser's." In light of this language, the Court finds that Plaintiff is entitled to reasonable attorney's fees pursuant to its contract with Van Bennett.

A number of courts have determined that the lodestar calculation is an appropriate method for determining attorney's fees in PACA actions. See, e.g., Spectrum Produce Distrib., Inc. v. Fresh Mktg., Inc., No. CIV. 11-06368 JBS, 2012 WL 2369367, at *3 (D.N.J. June 20,

---

[3] As Plaintiff acknowledges, the executed credit application form included in Exhibit B is significantly blurred. Pl.'s Mot. 2. For this reason, Plaintiff also includes as part of Exhibit B a "clear copy of a blank credit application" form. Id.

[4] On October 6, 2015, the Court entered an Order directing Plaintiff to clarify the basis for its claim for interest and to cite specific language in the invoices, credit application form, or other documents to support this claim. ECF No. 12. Plaintiff subsequently filed a memorandum referring the Court to Plaintiff's Motion and, again, failing to point to any specific language in any of the submitted documents to support its claim for interest. ECF No. 13.

2012). See also Weis-Buy Servs., Inc. v. Storey's Fruit & Produce, Inc., No. CIV. A. 98-6078, 2000 WL 1038122, at *1 (E.D. Pa. July 13, 2000). "The lodestar is the 'number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" Spectrum Produce Distrib., Inc., 2012 WL 2369367, at *3 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Courts follow the lodestar approach even when the plaintiff and the attorney had a private contingent fee contract. See Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 312 (3d Cir. 2008). The party seeking an award of fees has the burden to provide evidence supporting the hours worked and rates claimed. Spectrum Produce Distrib., Inc., 2012 WL 2369367, at *3.

The first step in applying the lodestar formula is to determine the appropriate hourly rate. Id.

> The party seeking the rate, here the Plaintiff, bears the burden of producing sufficient evidence of what constitutes a "reasonable market rate for the essential character and complexity of the legal services rendered." Evans v. Port Auth. Of N.Y. and N.J., 273 F.3d 346, 361 (3d Cir. 2001). . . . To show the reasonableness of a requested rate, counsel "must produce satisfactory evidence—in addition to [their] own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Id. at *3-4 (footnote omitted).

The second step in the lodestar calculation requires the court to determine how much time was reasonably expended on the matter. Id. at *4. "A plaintiff requesting attorney's fees must provide evidence supporting the time claimed to meet its burden of establishing the reasonableness of the hours worked." Id.

> [A] fee petition should include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, associates. . . . However, it is not necessary to know the

exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney. . . . A fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed.

Rode v. Dellarciprete, 892 F.2d 1177, 1190 (3d Cir. 1990).

Here, Plaintiff's Motion states the following:

In this litigation, Plaintiff's counsel has spent approximately five (5) hours of time, for the purpose of preparation of the complaint, processing service thereof and entry of judgment. If Plaintiff's attorney earned its fee on an hourly basis, the attorney's fees would be approximately $2,500.00, calculated at an hourly rate of $500.00 per hour.

Pl.'s Mot. 4. These statements do not provide sufficient information for this Court to conduct the lodestar calculation. The Court will therefore deny without prejudice the aspect of Plaintiff's motion seeking fees, but permit Plaintiff to file further documentation to enable the Court to arrive at the appropriate fee award.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Default Judgment is granted in part and denied in part. The Court will enter judgment in the amount of $9,145.00 of unpaid invoices and will permit Plaintiff to file the necessary materials to support Plaintiff's claim for attorney's fees. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge